# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 13, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2021AP1936-CR** | **Cir. Ct. No. 2018CF2857** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT I** |

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

CHRISTOPHER JUSTIN ANDERSON,

   DEFENDANT-APPELLANT.

   APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

   Before Brash, C.J., Donald, P.J., and White, J.

   **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Christopher Justin Anderson appeals a judgment of conviction arising from a driving while intoxicated accident, and an order denying his postconviction motion. Anderson contends that the circuit court erroneously exercised its discretion when it excluded evidence of the victim's intoxication at the time of the accident, and that he is entitled to a new trial in the interest of justice. In addition, Anderson contends that he received ineffective assistance of counsel because trial counsel failed to introduce available impeachment evidence, failed to introduce exculpatory evidence, and failed to properly address the evidence during closing argument. We disagree, and affirm.

## BACKGROUND

¶2 Anderson was charged with six counts: (1) homicide by intoxicated use of a vehicle while having a prior intoxicant-related conviction/revocation; (2) homicide by intoxicated use of a vehicle with a prohibited alcohol concentration (PAC) while having a prior intoxicant-related conviction/revocation; (3) operating a motor vehicle while intoxicated, fourth offense, with a minor child in the vehicle; (4) operating with a PAC, fourth offense, with a minor child in the vehicle; (5) resisting an officer; and (6) bail jumping.

¶3 According to the criminal complaint, on June 18, 2018, around 9:00 p.m., Anderson drove a vehicle that struck B.W. B.W. was transported to the hospital where he was declared deceased.

¶4 At the scene of the accident, police observed that Anderson's speech was slightly slurred, his eyes were glassy and bloodshot, his balance was unstable, and there was an odor of intoxicants coming from him. Inside Anderson's vehicle was a half-empty bottle of brandy.

¶5    S.H., who was inside Anderson's vehicle, said that Anderson was driving and the couple's eight-day-old daughter was with them. S.H. said that prior to the accident, she saw "persons entering the street." She then directed her attention to her daughter and heard a sound consistent with the vehicle striking something.

¶6    Due to the rainy weather, Anderson was taken to the district police station to perform field sobriety tests. An officer attempted to have Anderson perform field sobriety tests, but Anderson did not comply. Anderson was then arrested and taken to the hospital for a blood draw pursuant to a search warrant. Anderson refused to comply with the warrant and provide a sample, and officers had to struggle with him to hold him down. Anderson's blood alcohol concentration (BAC) was determined to be .308 g/100ml.

¶7    Anderson provided a statement to police. He admitted to drinking a quarter of a pint of brandy at home prior to getting into his vehicle with S.H. and their new baby. He said that he did not see the pedestrian who came out from between cars, but he heard a thump and S.H. told him that he had just hit someone. He then stopped his vehicle, went to the man, and waited for the arrival of the police.

¶8    Prior to trial, Anderson moved to introduce "evidence of [B.W.'s] blood alcohol content at the time of the incident in question." Anderson proffered that B.W. had a "BAC of .20, two-and-a-half times the legal limit, had he been driving." Additionally, Anderson sought to admit statements made by N.S., B.W.'s companion at the time of the accident, regarding B.W.'s intoxication. Anderson proffered that N.S. told police that, "tonight he was just drunk," and "I had never seen him that bad." N.S. also warned B.W. to "move over and get out

of traffic" because he could not see the cars coming. Anderson asserted that the evidence of B.W.'s intoxication was admissible under WIS. STAT. § 940.09(2) (2021-22),[1] which provides that a defendant has an affirmative defense "if he or she proves by a preponderance of the evidence that the death would have occurred even if he or she had been exercising due care and he or she had not been under the influence of an intoxicant[.]"

¶9    The State responded that Anderson should be allowed to admit evidence, such as the location of the victim, the physical appearance of the victim, and the timing of the victim's movements. However, the State argued that Anderson should not be allowed to admit evidence that explains *why* the victim may have stepped into the roadway as it would divert the jury's attention to contributory negligence, which is forbidden under Wisconsin law.

¶10   The defense replied that Anderson was not arguing that B.W.'s intoxication made him negligent, but that it was relevant to helping the jury understand why the accident was unavoidable.

¶11   The circuit court denied the motion. The court stated in pertinent part that:

> Whether [B.W.] was in the street, whether he darted out, whether he was weaving around in the middle of the street, whether he was wearing dark clothing, whether he was engaging in conduct that would make the incident unavoidable, is certainly part of your affirmative defense. You get to do that.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

> But [B.W.'s] blood alcohol concentration, I think it does shift this to a contributory negligence standard, none of which is allowable in these criminal cases.

The court then reiterated that "anything that has to do with [B.W.'s] conduct in the road, whether [B.W.] was in the road, whether anybody else would have been in the same situation as [Anderson]" was admissible, but evidence of B.W.'s BAC would not be allowed.

¶12    The circuit court's ruling did not specifically address the statements from N.S. regarding B.W.'s intoxication.  As a result, Anderson subsequently filed a motion specifically seeking to admit N.S.'s statements, which the circuit court denied.

¶13    The case proceeded to trial.  The jury found Anderson guilty as charged, with the exception of count five, resisting an officer, which the State dismissed at trial.  The court imposed a sentence of fourteen years of initial confinement and eight years of extended supervision.

¶14    Anderson filed a postconviction motion.  Relevant to this appeal, Anderson contended that his trial attorney was ineffective for failing to: (1) impeach S.H. with an allegedly inconsistent prior statement; (2) introduce allegedly exculpatory statements, and (3) properly address the evidence during closing argument.[2]

---

[2] Anderson also contended that trial counsel was ineffective for failing to sufficiently conduct discovery.  Anderson, however, does not raise this issue on appeal.  Accordingly, we deem it abandoned and do not address it further.  *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993).

¶15    The circuit court denied Anderson's postconviction motion without an evidentiary hearing.  The court concluded that Anderson had failed to establish that he was prejudiced by any of the purported errors.  This appeal follows.  Additional relevant facts are referenced below.

## DISCUSSION

### I.    Admissibility of B.W.'s intoxication

¶16    Anderson first contends that the circuit court erred in excluding evidence of B.W.'s intoxication at the time of the accident.

¶17    A circuit court's decision to admit or exclude evidence lies within the court's discretion.  *State v. Harris*, 2008 WI 15, ¶85, 307 Wis. 2d 555, 745 N.W.2d 397.  We will reverse such a determination only if the circuit court erroneously exercises its discretion.  *State v. Morgan*, 195 Wis. 2d 388, 416, 536 N.W.2d 425 (Ct. App. 1995).  The question on appeal is not whether we agree with the circuit court's decision, but whether appropriate discretion was exercised.  *Id.* at 443.

¶18    Here, the circuit court properly exercised its discretion when it determined that evidence of B.W.'s intoxication was inadmissible.  To start, the evidence was not relevant.  Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  WIS. STAT. § 904.01.  As the circuit court found, the evidence of B.W.'s intoxication would have allowed the jury to view B.W. as contributorily negligent, which is not permissible under Wisconsin law.  *See State v. Lohmeier*, 205 Wis. 2d 183, 195, 556 N.W.2d 90

(1996) ("It is widely recognized that contributory negligence is not a defense in a criminal prosecution.").

¶19 While there are situations in which a victim's negligent conduct could potentially establish that the accident would have been unavoidable even if the defendant was sober, *see id.* at 196, the evidence of B.W.'s intoxication does not fit that description. The jury heard evidence that at the time of the accident it was raining and dark, the street lights were not on, and B.W. was in the road and had on dark clothes. B.W.'s intoxication was not relevant to whether the accident could have been avoided. The question the jury needed to decide was whether the accident could have been avoided if Anderson was sober, not *why* B.W. was standing in the road.

¶20 In support of his argument, Anderson cites a number of cases from other jurisdictions. *See* ***State v. Nelson***, 806 N.W.2d 558 (Minn. Ct. App. 2011), ***People v. Feezel***, 783 N.W.2d 67 (Mich. 2010), and ***Buckles v. State***, 830 P.2d 702 (Wyo. 1992). These cases, however, involved the application of proximate causation, not whether the evidence was relevant to an affirmative defense like Wisconsin's. *See* ***Nelson***, 806 N.W.2d at 562-64; ***Feezel***, 783 N.W.2d at 73-75; ***Buckles***, 830 P.2d at 706-08. As the Wisconsin Supreme Court has stated:

> Section 940.09, Stats., requires that the prosecution prove and the jury find beyond a reasonable doubt a causal connection between the defendant's unlawful conduct, operation of a motor vehicle while intoxicated, and the victim's death. *The statute does not include as an element of the crime a direct causal connection between the fact of defendant's intoxication, conceptualized as an isolated act, and the victim's death.* Under this statute there is an inherently dangerous activity in which it is reasonably foreseeable that driving while intoxicated may result in the death of an individual. The legislature has determined this activity so inherently dangerous that proof of it need not

require causal connection between the defendant's intoxication and the death.

*State v. Caibaiosai*, 122 Wis. 2d 587, 594, 363 N.W.2d 574 (1985) (emphasis added).

¶21    Anderson also cites to *Coates v. State*, 600 A.2d 856 (Md. Ct. Spec. App. 1992). In *Coates*, the defendant was convicted of three counts of homicide by a motor vehicle while intoxicated and lesser related offenses. *Id.* at 858. The parties disputed whether it was the defendant or the victims that had crossed the center of the road and caused the accident. *Id.* On appeal, the court held that the intoxication of any of the victims was relevant to determining what happened— whether the victims crossed the center of the road or the defendant had crossed the center of the road. *Id.* at 862.

¶22    Contrary to *Coates*, here, there is no dispute that B.W. was walking in the road when he was hit. The question at trial was whether Anderson would have hit B.W. if Anderson was sober. *See* WIS. STAT. § 940.09(2)(a). Thus, B.W.'s intoxication was not relevant, and the circuit court properly excluded the evidence.

¶23    In addition, Anderson contends that this court should grant a new trial in the interest of justice pursuant to WIS. STAT. § 752.35 because the jury did not hear evidence of B.W.'s intoxication. According to Anderson, this prevented the controversy from being fully and fairly tried.

¶24    "The power to grant a new trial when it appears the real controversy has not been fully tried 'is formidable, and should be exercised sparingly and with great caution.'" *State v. Sugden*, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795

N.W.2d 456 (citation omitted). We exercise our power to grant a discretionary reversal only in exceptional cases. *Id.*

¶25 This is not an exceptional case in which the real controversy has not been fully tried. As stated above, the record reflects that the evidence of B.W.'s intoxication was not admissible. Given this conclusion, we decline to exercise our discretionary authority to order a new trial in the interest of justice.

## II. Ineffective Assistance of Counsel

### A. Legal principles

¶26 To establish ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must show that trial counsel's representation fell below objective standards of reasonableness. *See id.* at 688. To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶27 Whether counsel's performance was deficient and whether the defendant was prejudiced are questions of law that we review *de novo*. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111. If the defendant fails to adequately show one prong of the test, we need not address the second. *Strickland*, 466 U.S. at 697.

¶28 When deciding whether a defendant is entitled to an evidentiary hearing based on an ineffective assistance of counsel claim, we first independently

9

determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently." *State v. Spencer*, 2022 WI 56, ¶23, 403 Wis. 2d 86, 976 N.W.2d 383 (citations omitted). "If the record conclusively demonstrates the defendant is not entitled to relief, the circuit court has the discretion to decide whether to hold a hearing, which we review for an erroneous exercise of discretion." *Id.*

¶29 Anderson makes three arguments as to why trial counsel was ineffective. Anderson contends that trial counsel was ineffective for failing to: (1) impeach S.H. with an allegedly inconsistent statement to the police; (2) introduce allegedly exculpatory evidence; and (3) properly address the evidence during closing argument. We address each of Anderson's arguments in turn and conclude that the record conclusively demonstrates that Anderson is not entitled to relief. *Id.*

### B. Impeachment Evidence

¶30 Anderson contends that trial counsel should have impeached S.H. with her pre-trial statement to law enforcement that she saw "persons entering the street."

¶31 As the State observes, contrary to Anderson's argument, the police report was not inconsistent with S.H.'s testimony. At trial, the State asked S.H. if she "remember[ed] seeing people on the roadway before they were hit—before a person was hit?" S.H. responded that she "remember[ed] seeing them ahead." Later, S.H. testified that she "saw people out." When asked whether she saw people on the side of the road, she responded that she "never said [she] didn't."

10

Thus, S.H.'s statement in the police report that she saw "persons entering the street" was not inconsistent with her trial testimony.

¶32    In addition, S.H.'s statement in the police report is not helpful to Anderson's defense.  S.H.'s statement that she saw "persons entering the street" implies that she saw B.W. from a distance before he entered the street.  The fact that S.H. could see B.W. before he entered the street does not help the defense prove that the accident was unavoidable.  Accordingly, we reject Anderson's argument that trial counsel was ineffective for failing to introduce S.H.'s prior statement.  *See* ***State v. Golden***, 185 Wis. 2d 763, 771, 519 N.W.2d 659 (Ct. App. 1994) (holding that counsel does not render ineffective assistance by failing to raise issues that are meritless).

### C. Exculpatory Evidence

¶33    At trial, Anderson introduced testimony from Thomas Milner, who was driving down the street right before the accident.  Milner testified that the street lights were not on and it was extremely rainy, which affected his ability to see.  As Milner was driving, he testified that he saw a man sitting in a walker with a woman pushing him in the center of the street.  Milner stated that he was "maybe a foot away" before he saw them and "kind of swerved to keep from hitting them." According to Milner, if they had been in his lane, he would have "absolutely" hit them.

¶34    Milner further testified that he saw Anderson drive by him. Anderson was not driving fast or erratically.  Miller thought that Anderson might hit the people because they were in Anderson's lane.  Milner saw Anderson's brake lights come on, but did not observe the actual impact.

¶35 Anderson contends that trial counsel should have introduced "information from Milner which tended to exculpate Anderson." In particular, Anderson contends that trial counsel should have introduced a pre-trial statement from Milner that prior to the accident, Milner had observed Anderson's vehicle swerve.

¶36 However, even if we assume that trial counsel was deficient for failing to introduce this statement, Anderson has not established that he was prejudiced. Whether Anderson swerved or attempted to swerve does not matter— Anderson hit B.W. The question was whether Anderson would not have hit B.W. if Anderson had been sober. *See* WIS. STAT. § 940.09(2)(a). Testimony that Anderson swerved or attempted to swerve would not have added anything to the analysis. Thus, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

### D. Trial Counsel's Closing Argument

¶37 At trial, the State called Mary Hix. Hix testified that prior to the accident she saw someone in a "motorized wheelchair" with a female walking alongside it. Hix made a comment to the people in the car with her that, "he's gonna get hit[.]" Hix testified, however, that she did not hit the man because she saw him and was able to drive around him.

¶38 During closing arguments, the prosecutor argued that Hix, who was driving in the exact same conditions and was not drunk, saw B.W. and was able to avoid him.

¶39    Anderson contends that the evidence did not show that B.W. was in a "motorized wheelchair," and trial counsel should have attacked Hix's testimony during closing argument. According to Anderson, Hix must have observed someone other than B.W. in the road.

¶40    Anderson's trial counsel, however, did point out in closing arguments that B.W. was not in a wheelchair. Trial counsel stated that "Hix said that she thought he was in a wheelchair, but he actually was in a walker." Trial counsel then went on to emphasize that this established how dark it was and that Hix "couldn't see either." We cannot say that trial counsel's decision to use Hix's statement regarding the wheelchair to emphasize the lighting conditions was an objectively unreasonable strategy. *See State v. Balliette*, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334 ("Counsel's decisions in choosing a trial strategy are to be given great deference.").

¶41    Moreover, we note that even if Hix saw a person other than B.W. in a wheelchair, the fact that she was able to avoid the person bolsters the State's argument that Anderson would have been able to avoid B.W. if Anderson had been sober. As Anderson's cross-examination of Hix suggested, someone seated in a wheelchair would be harder to see than someone standing. Thus, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

¶42    Therefore, for all of the reasons above, we conclude that the record conclusively shows that Anderson is not entitled to relief, and the circuit court properly denied Anderson's postconviction motion without an evidentiary hearing. *Spencer*, 403 Wis. 2d 86, ¶23.

**CONCLUSION**

¶43    In sum, we are not persuaded that the circuit court erroneously exercised its discretion when it excluded evidence of B.W.'s intoxication.    In addition, Anderson was not deprived of effective assistance of counsel. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.